# Potter and Colfelt *versus* McCoy.

The nonjoinder of a person, who ought to be joined, in an action founded on a joint contract, whether specialty or not, can only be taken advantage of by a plea in abatement, though the joint obligation appear to have been written by the party not joined.

Where defendants plead the nonjoinder of a party in abatement, and afterwards plead in bar and go to trial on the merits, it is a waiver of all defences peculiar to the plea in abatement.

Where two partners are present when a partnership note under seal is given, one writing and the other sealing the note, it is competent evidence to go to the jury, on the question of a joint execution.

Where the jury find that the parties sued assented to the signing and sealing of the note, it is not material that they used the name of a firm, in which another who was not present nor assenting was a partner. By whatever name they called themselves, they were liable according to the tenor of the instrument they signed.

The subsequent guaranty of the note by a firm of which such third party was a partner, does not affect the liability of the original parties, where the suit is upon the note itself, and not upon the guaranty.

Where a judgment is confessed by one of two of the original debtors, and another, for the claim in suit, there is no merger of the original indebtedness.

Extinguishment of one security is not to be implied merely from the creditor's acceptance of a new one, voluntarily given by other parties for the same debt.

ERROR to the Common Pleas of *Mifflin county.*

This was an action of debt by Francis McCoy against John Potter and Charles Colfelt, on the following note, under seal.

"One day after date we promise to pay Francis McCoy, the sum of twelve hundred and seventeen dollars and seventy-four cents, value received. Witness our hands and seals this 7th day of June, 1843.
$1217.74          J. & J. POTTER & COLFELT. [Seal.]"

John Potter, James Potter, and Charles Colfelt were partners trading under the firm name of "J. & J. Potter & Colfelt." This firm was dissolved shortly after the note was given, and its principal affairs settled. The Messrs. Potter had in their hands sufficient assets of the firm to pay the note in suit. J. & J. Potter

[Potter and Colfelt v. McCoy.]

failed in 1847, and confessed judgments to their creditors, among whom was the plaintiff in this suit. In his favour was one in the Common Pleas of Centre county for $2440, and one in the Common Pleas of Clearfield county for $1065. These two judgments were for the indebtedness of the Potters to McCoy, including this note. On the judgment in Centre county the plaintiff realized $298.84, and $350 out of the one entered in Clearfield.

The body of the note on which this suit was brought was in the handwriting of John Potter, and the signature was in the handwriting of Charles Colfelt, and on the same paper below the note was a guaranty of the note, signed J. & J. Potter, in the handwriting of John Potter. James Potter testified that he had been informed that a firm note had been given to McCoy, and that he assented to it.

The suit was brought against John Potter and Charles Colfelt, to January term, 1850; to which the defendants on the 4th May, 1850, pleaded in abatement the nonjoinder of James Potter. And on the 10th September, 1851, entered the plea of payment with leave, &c.

On the trial in the court below the plaintiff offered the note in evidence, which was objected to by defendants "that the note is under seal and in the partnership name; that J. and J. Potter and Charles Colfelt composed the firm, and the suit is only against two of the firm." The court overruled the objections, and sealed a bill of exceptions.

The defendants resisted a recovery on the grounds,

1. That there was not sufficient evidence that John Potter assented to the giving of a firm note under seal.

2. Because James Potter had not been joined in the action.

3. Because the plaintiff had accepted of judgments from J. & J. Potter including this debt, and that if he could recover on the note at all it must be against Charles Colfelt alone.

His Honour (GRAHAM, P. J., holding a special court), after stating the facts and the positions assumed by defendants' counsel, instructed the jury as follows:—

"Defendants' counsel rely upon the case of Lewis v. Williams, 6 Wharton 264, as ruling this case, but the cases are not analogous. In that, one partner gave a judgment in an amicable action brought against him alone. He also gave his bond with warrant of attorney to enter judgment against him in Delaware, for the same debt; and judgment was entered in Delaware. Afterwards a suit was brought against the surviving partner (the partner against whom the judgment was obtained being dead) for the same debt on the partnership liability, and the court held that the judgment obtained against one partner, extinguished the joint partnership liability, and was a bar to the suit against the surviving partner. If the case before us was on the joint partner-

[Potter and Colfelt *v.* McCoy.]

ship liability, it would be similar to the case cited; but it is on the note of two members of the firm, and not upon the joint liability of all. But the authority of Lewis *v.* Williams is impaired by subsequent cases. In Jones *v.* Johnston, 3 *W. & Ser.* 276, Chief Justice GIBSON states with logical accuracy and precision, the distinction between merger of the security, and extinguishment by satisfaction of the debt. Extinguishment by merger of the security, is by operation of law. 'The original security is extinguished, but the debt remains. Merger works a dissolution, not of the debt, but of the original security, whose existence sinks into that of the preceding one, and the union must be so intimate that the one cannot be separated from the other. The debt is the same, but the old evidence of it melts into the new one, and then the creditor gains a higher security without having an indivisible debt of different degrees.' A promissory note is merged in a bond —a bond in a judgment, if between the same parties and for the identical debt. 'Merger takes place only where the debt is one, and the parties are identical.'

"Merger, by extinguishment of the security, cannot occur in the case before us, for the debt is larger and different, including a debt of the Potters, in addition to the debt of the Potters & Colfelt. The parties are different, for Colfelt is omitted, and James Potter is included, in the judgment.

"Extinguishment by satisfaction of the debt is, when one debt is accepted in payment of another. The debt is extinguished, and this may take place between securities of the same or of different degrees. The extinguishment of the debt depends upon the intention of the parties, and is not effected by operation of the law. Hence, where there is any evidence that the security was taken as payment and satisfaction of the original debt, the intention of the parties is a question of fact for the jury, and not for the court,— but it would be wrong for the court to permit the jury to infer such intention, in the absence of all evidence tending to prove it, when the last security is for a different amount and between different parties. Under such circumstances, in the absence of all proof to the contrary, the law presumes it to be taken as additional security, and not in payment of the original debt. Thus, in Jones *v.* Johnston, where one of three partners gave his single bill with security, for a debt of the firm, and a suit was afterwards brought on the book account against all the partners, Chief Justice GIBSON says, ' This single bill was originally given by one of the three original debtors, with two sureties, and for more than was due at the date of it; so that it could be taken in payment of the original debt only on proof that it was so accepted. That there was such proof is not pretended.' So in Wallace *v.* Fairman, 4 *Watts* 379, it is said, ' To work an extinguishment it must be shown that the obligation of a third person was given and accepted

[Potter and Colfelt v. McCoy.]

in satisfaction of the debt. So if the higher security be between different parties, or for other debts besides, and not the exact amount, it will be presumed to be intended as collateral security.'

"In Tams v. Hitner, 9 *Barr* 448, where the notes of two of three partners were given for the debt of the firm, the court say, 'If the notes were not taken as collateral security, but in payment and satisfaction, it was the duty of the defendant to show it. The burthen of proof was thrown upon him.'

"In the present case there is not a spark of evidence showing the judgments were given by the Potters, and accepted by McCoy, in payment and satisfaction of the debt due, by the firm of J. & J. Potter & Colfelt. On the contrary, the evidence of Judge Burnside is clear and uncontradicted, that McCoy had no knowledge of the transaction, so far as the knowledge of the counsel who entered the judgments extended, until after the notes were executed and judgment entered thereon.

"We therefore instruct you that the legal position assumed by defendants' counsel, is not an available defence to plaintiff's demand, and if the evidence satisfies you that John Potter assented to giving the sealed bill, signed by Colfelt, in the name of the firm, at the time of execution, or afterwards ratified it, your verdict should be for the plaintiff. Should you find for the plaintiff, the defendants will be entitled to certain deductions from the amount of the note and interest claimed by the plaintiff. McCoy has received $648.84 on the two judgments confessed by the Potters. Equity would require, and the plaintiff is satisfied, that you adopt the following mode in appropriating the money received by McCoy: Calculate interest on the Colfelt note until the date of the judgment of J. & J. Potter to McCoy; deduct the note and interest from the Potter judgments, and apply pro rata the money received by McCoy, $648.84, to the Colfelt note and interest, and the balance of the Potter judgment. The pro rata to the Colfelt note thus ascertained, will be a proper credit on this suit. But in calculating interest you will be careful not to compound it by calculating interest upon interest.

"The sum on which you charge interest must not exceed the original amount of the note, $1217.74."

The jury found for the plaintiffs the sum of $1352.61, and judgment was entered upon the verdict.

The admission of the note in evidence, and the charge of the court, were the errors assigned.

*Woods*, for plaintiffs in error.

*Hale*, for defendant in error.

[Potter and Colfelt *v.* McCoy.]

The opinion of the court was delivered by

WOODWARD, J.—The writ issued against John Potter and Charles Colfelt, and all the objections raised on account of the nonjoinder of James Potter, are answered by the remark, that that matter should have been pleaded in abatement. If a person be omitted as defendant, who ought to be joined in any action founded on a joint contract, whether a specialty or not, the objection can only be taken advantage of by a plea in abatement, and though the joint obligation appear to have been written by the party not joined, it is no variance at the trial: 1 *Saunders* 291, b. n. 4; 1 *B. & A.* 224.

It appears from the record that the defendants entered a plea in abatement, but they abandoned it when afterward they pleaded the general issue and went to trial on the merits. This was a waiver of all defences that were peculiar to that plea. Nor is there any ground for the complaint that the note was admitted in evidence before all the proof was in of John Potter's assent to it. It was admitted that the note was in his handwriting, and this was a circumstance from which the jury might have presumed, without more, that he was assenting to the seal. One partner cannot, without special authority, bind his copartner by an instrument under seal; but where it is admitted that both were present, one writing and the other sealing the note, it is competent to go to the jury on the question of a joint execution. The jury found that the two parties sued, sealed or assented to the sealing of this note, and it is in no wise material that they used the name of a firm in which James Potter, who was not present or assenting, was a partner. By whatever name they called themselves, the defendants are liable according to the tenor of the instrument they signed.

Nor is the subsequent guaranty signed by J. & J. Potter, material, as affecting the liability of the original parties. The suit is not upon that, but upon the note; and to that James Potter was not a party, or if he was, the defendants should have insisted on their plea in abatement.

As to the rest of this case, we approve entirely of the views advanced by the learned judge who tried the cause. There could be no merger of the security here, for Colfelt, who was a party to the note, was not a party to the judgment confessed by the Potters to the plaintiff, and of extinguishment there was not a particle of evidence. Indeed the circumstances under which the judgment was executed, exclude all inference of an intention on the part of McCoy to give up one security for the other. Extinguishment of a debt by substituting another one for it, is always a question of intention,—but the extinguishment of one security is not to be implied merely from the creditor's acceptance of a new one voluntarily offered by other parties for the same debt. A man

[Potter and Colfelt *v.* McCoy.]

who holds a note against two, may take a judgment voluntarily confessed from one of the drawers and another for the same debt, without impairing his note, just as he may take a bond from one and a mortgage from another for the same money.

We perceive no error in the record, and do accordingly affirm the judgment.